# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES C. GRANDE,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **STARBUCKS CORPORATION, et al.,** | : | |
| *Defendants* | : | **No. 18-04036** |
| | : | |

## MEMORANDUM

PRATTER, J.                                                                                                         FEBRUARY 7, 2020

This Court previously dismissed Mr. Grande's complaint against Starbucks and the other named Defendants because the pleadings lacked the necessary factual details required for the case to proceed. In that ruling, the Court permitted Mr. Grande an opportunity to file an amended complaint, if he could cure the deficiencies of his previous complaint. He has since timely filed an amended complaint.

The Court now addresses three defense motions which seek to dismiss the amended pleadings as failing to state a cognizable or plausible claim. Even under a very liberal reading of Mr. Grande's amended complaint, several of Mr. Grande's claims continue to fail to plausibly state a cause of action. For this reason, the Court will permit only Mr. Grande's battery claim encompassed in his first count and his product tampering claim to proceed. The others are dismissed.

### BACKGROUND

Mr. Grande hopes to pursue various claims against Starbucks Corporation, Starbucks' former Executive Chairman, Howard Schultz, and the property owners of two store locations, Two Six Two S. 18th Associates L.P. (which owns the 1801 Spruce Street Starbucks store) and 1528 Walnut Limited Partnership (which owns the 1528 Walnut Street Starbucks store). Mr. Grande

1

bases his complaint on allegations that Starbucks, and its employees mistreated him in the following ways:[1]

- By creating hazardous and infectious waste at their store locations that Mr. Grande patronized;
- By sweeping waste around Mr. Grande;
- By tampering with beverages to the extent that they made Mr. Grande sick;
- By creating products like tea and coffee that required Mr. Grande to utilize the restroom and that forced him to come into contact with human waste;
- By claiming that stores would be sanitary when in fact they were not;
- By invading Mr. Grande's privacy;
- By seizing Mr. Grande's "personal data" and other forms of his "likeness"; and
- By using Mr. Grande's surname in their products without compensating Mr. Grande.

In his amended complaint, Mr. Grande asserts counts labeled as follows: "Count 1 Hazardous Waste Battery"; "Count 2 Consumer Product Tampering"; "Count 3 Restroom Battery with Hazardous Waste"; "Count 4 Sanitation Fraud"; "Count 5 Invasion of Privacy Intrusion Upon Seclusion"; "Count 6 Misappropriation of Publicity of Name"; "Count 7 Misappropriation of Publicity of Likeness"; and "Count 8 Piercing the Corporate Vail [sic]." He seeks $44,000,000.00 in damages.

## LEGAL STANDARD

The Court construes Mr. Grande's *pro se* pleading liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *Pro se* litigants are "held to 'less stringent standards' than trained

---

[1] Mr. Grande's factual allegations have changed from his initial complaint. The allegations he first brought are summarized in the Court's April 1, 2019 Memorandum docketed in this case at Doc. No. 28.

counsel." *Benckini v. Hawk*, 654 F. Supp. 2d 310, 316 n.1 (E.D. Pa. 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nonetheless, in construing the pleadings liberally, district courts must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "to give the defendant fair notice of what the claim is and the grounds upon which it rests," the plaintiff must provide "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, to survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. The Court assumes that the allegations in the complaint and all reasonable inferences emanating from the allegations are true, viewing those facts and inferences in the light most favorable to the non-moving party. *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand that the Court ignore, or even discount, reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and quotation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

DISCUSSION

Although the Court appreciates Mr. Grande's attempts to cure the deficiencies of his initial complaint, his amended complaint still largely does not set forth plausible claims in the main. The Court addresses each claim in turn.

**I.    The Battery Claims**

The first and third counts appear to assert battery claims. To plead a plausible claim of battery under Pennsylvania state law, Mr. Grande must factually allege a harmful or offensive contact with a person that results from an act intended to cause the plaintiff or a third person to suffer such a contact. *Herr v. Booten*, 580 A.2d 1115, 1117 (Pa. Super. Ct. 1990). Indeed, because actual contact is a requirement of the battery claim, if there is no allegation of actual touching, a plaintiff has failed to set forth a proper battery claim.

Count 1 is asserted against Starbucks Corporation, Two Six Two S. 18th Associates L.P., and 1528 Walnut Limited Partnership. Mr. Grande alleges that the Defendants committed battery against Mr. Grande "by attacking him with hazardous waste which included human waste, infectious waste, bacteria, fungi, carcinogens, toxins, and disease pathogens." Am. Compl. (Doc. No. 30) at ¶ 12. He avers that the Defendants intentionally swept this waste at him because they waited for him to appear at each storefront before doing so. *Id.* at ¶¶ 13,14. Allegedly, Mr. Grande suffered "forced [ ] contact to [his] eyes, digestive tract, lungs, skin and clothing[.]" *Id.* at ¶ 15.

In Count 3, Mr. Grande claims that the Defendants provided him beverages which required his use of the restroom. Such actions allegedly caused Mr. Grande to suffer a "battery" because he was forced to use the restrooms, which were poorly maintained, and he came into contact with toxic and/or hazardous waste. *Id.* at ¶¶ 30-34. He alleges that the offensive contact occurred while in or at the entrance of the bathroom of these stores.

4

The Court will permit Count 1 to proceed, but will dismiss the third count. With respect to this third count, the allegations do not actually plead that the Defendants (or their agents) made physical contact with Mr. Grande.[2] Nor do they adequately assert that the Defendants intended to make such contact with him. Rather, the allegations amount only to the assertion that Mr. Grande voluntarily consumed beverages purchased at Starbucks locations, resulting in his need to use the restroom, and while he was in the restroom, he encountered sub-par cleanliness. The allegations do not give rise to a plausible claim for battery, and the Court will dismiss this claim with prejudice.

However, with respect to his first battery claim, contained in Count 1, the Court finds that Mr. Grande has given the Defendants sufficient notice of his cause of action. From his allegations, considered in the light most favorable to him, the Court infers that the Defendants (or their employees) intentionally swept waste at Mr. Grande, forcing him to make contact with such waste. Mr. Grande has also provided specific dates when these alleged actions took place. At this time, he has sufficiently set forth a plausible battery claim, and the Court will permit Count 1 to proceed.[3]

## II.  The Consumer Product Tampering Claim

With respect to his second count, Mr. Grande alleges that property owners Two Six Two S. 18th Associates L.P. and 1528 Walnut Limited Partnership tampered with Starbucks beverages that he drank and that made him ill. In his opposition papers, Mr. Grande clarifies that he asserts his second cause of action under Pennsylvania's Food Safety Act, 3 Pa.C.S.A. §5721 *et seq.*, the

---

[2]  An employer may be held responsible for the acts of its employee which cause injury to a third party under a *respondeat superior* theory if the acts were committed during the course of and within the scope of employment. *See Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998). There is no dispute presently before the Court as to whether Defendants can be held liable for the torts of their employees.

[3]  The flaw in this Count 1 may eventually be the absence of the requisite contact for a battery claim, given that the Court questions whether dust or dirt particles moved by "sweeping" is sufficient in the final analysis to support such a claim.

5

Public Eating and Drinking Place Law, 35 P.S. §655,[4] and Section 1705(d) of the Administrative Code of 1929, which he cites to be 71 P.S. §455(d).

It is unclear whether the Food Safety Act permits a civil private right of action. *See* 3 Pa.C.S.A. §5725(b) (describing that "the secretary may assess a civil penalty not to exceed $10,000 upon an individual or business for each offense."); §5726(a) ("Whenever the secretary has probable cause to believe that food is adulterated or misbranded, the secretary shall affix to the container or wrapping a tag or other marking.") Furthermore, the provision of the Public Eating and Drinking Place Law, as well as the Administrative Code of 1929 that Mr. Grande cites do not appear to pertain to Mr. Grande's cause of action. *See* 31 P.S. §655 (setting forth that "[m]ilk containers in which '[m]ilk for pasteurization is received in milk plants from dairy farms shall be thoroughly cleansed and dried before returning to the dairy farm.") Mr. Grande does not assert any factual allegations related to milk. Moreover, there is no §1705(d) of the Administrative Code of 1929. And, §455(d) of the Administrative Code of 1929 relates to seasonal farm labor.

However, mindful that the instruction of the Third Circuit Court of Appeals essentially strongly urges that the Court find and apply the applicable law to the factual allegations asserted, the Court concludes that at this time, Mr. Grande has adequately pled a defective product claim. The Pennsylvania Supreme Court has adopted the Restatement (Second) of Torts which governs the persons and/or entities that may be held strictly liable for the manufacture of or sale of defective products. *See Webb v. Zern*, 220 A.2d 853, 855 (Pa. 1966). The Second Restatement states that "(1) [o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate

---

[4] Mr. Grande cites to the Food Safety Act of 31 P.S. §§20.1 *et seq*. However, that provision was repealed and replaced by 3 Pa.C.S.A. §5721 *et seq*. While Mr. Grande cites to 35 P.S. §§655.1-655.13, such provisions do not exist. Rather, Section 655 of Title 35 relates to milk containers and pasteurization.

6

user or consumer, or to his property, if: (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." Restatement (Second) of Torts §402A (1965). The Second Restatement also provides that this rule applies although "the seller has exercised all possible care in the preparation and sale of his product, and [ ] the user or consumer has not bought the product from or entered into any contractual relation with the seller." *Id.* The term seller does not extend strict liability to all transactions, however. *Thorpe v. Bollinger Sports, LLC*, No. 14-4520, 2015 WL 5299614, at *2 (E.D. Pa. Sept. 9, 2015). Rather, a seller is defined as a supplier of products who, "because they are engaged in the business of selling or supplying a product, may be said to have 'undertaken and assumed a special responsibility' toward the consuming public and who are in a position to spread the risk of defective products.'" *Id.* citing (*Gavula v. ABA Servs., Inc.*, 756 A.2d 17, 20 (Pa. Super. Ct. 2000)).

With respect to the tampering claim, Mr. Grande avers that the defendant property owners tampered with beverages he consumed in August 2017 and August 2018. He also alleges that such consumption "made him extremely sick[.]" Am. Compl. (Doc. No. 30) at ¶¶ 23-24. An inference can be made that the claim is that as sellers, the Defendants, through their agents, sold defective drinks, which caused Mr. Grande injury. Therefore, the Court will permit the second cause of action to proceed.

### III.    The Fraud Claim

With respect to the fourth count titled "Sanitation Fraud," the Court previously set forth the elements of a fraud claim and the heightened pleading standard through which the Court assesses fraud allegations. *See* Memorandum (Doc. No. 28), p. 7. The elements of a fraud claim are: (1) a representation; (2) which is material to the transaction at hand; (3) that is made falsely,

7

with knowledge of its falsity, or recklessness as to whether the representation is true or false; (4) with the intent to mislead another into reliance on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury that was proximately caused by the reliance. *Id.* (citing *Gruenwald v. Advanced Computer*, 730 A.2d 1004, 1014 (Pa. Super. Ct. 1999)). Again, as instructed by the Court previously, the circumstances underlying an alleged fraud must be set forth with particularity.

Mr. Grande has not sufficiently alleged a fraud claim. For instance, Mr. Grande avers that the Defendants "are required by law to be sanitary and they broadcast verbally and in writing the healthy status of their stores, products and services." Am. Compl. (Doc. No 30) at ¶ 41. Yet, he proffers no specificity with respect to any such purported representation. Nor has Mr. Grande plausibly alleged an intent to deceive, justifiable reliance, or causation. Consequently, given the prior opportunity to revise this claim, the Court will now dismiss the fourth cause of action with prejudice.

## IV. Invasion of Privacy Intrusion Upon Seclusion

The Court will also dismiss the fifth count. A defendant who "intentionally intrudes, physically or otherwise, upon the solitude of another of his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Vogel v. W.T. Grant Co.*, 327 A.2d 133, 136 n.9 (Pa. 1974). To support this claim, Mr. Grande relies on Defendants' alleged acts of battery, tampering with the beverages he consumed, and "sanitation fraud" as the bases of his claim, and contends that by way of the underlying conduct giving rise to these purported claims, Defendants violated his privacy rights. He further alleges that these actions, risking his exposure to waste, were highly offensive to a

8

reasonable person because they increased the "possibility of diseases like hepatitis and cancer." Am. Compl. at ¶ 54-55.

These allegations are, at most, conclusory. Mr. Grande does not aver facts to support that the "intrusion" was highly offensive to a reasonable person, nor that he was in a solitary place when the purported intrusion occurred. Moreover, the Court has rejected the claim for battery related to his use of the restroom, as well as Mr. Grande's fraud claim. To the extent that he relies on the allegations related to these claims to support his privacy claim, such allegations cannot and do not. With respect to the battery and consumer tampering claims that have been permitted to proceed, their underlying factual allegations also do not give rise to the inference that Mr. Grande was isolated or otherwise in some fashion, in a solitary place, during any averred intrusion.[5]

## V. The Misappropriation of Publicity Claims

With respect to Counts 6 and 7, titled "Misappropriation of Publicity of Name" and "Misappropriation of Plaintiff's Likeness," respectively, Pennsylvania has codified a cause of action for misappropriation under 42 Pa.C.S.A. §8316. That provision specifically provides that "Any natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose without the written consent of such natural person . . . may bring an action to enjoin such unauthorized use and to recover damages for any loss or injury sustained by such use." 42 Pa.C.S.A. §8316(a). "Name or likeness" is defined as any trait of "a natural person that serves to identify that natural person to an ordinary, reasonable viewer or listener, including, but not limited to, name, signature, photograph, image, likeness, voice or a substantially similar imitation of one or more thereof." *Id.* § 8316(e)(2). The statute defines "commercial value" as

---

[5] Nor could these allegations, as presented, which claim that misconduct that occurred at Starbucks locations that are open to the public support such a claim. For this reason, the Court will dismiss this claim with prejudice.

9

"[v]aluable interest in a natural person's name or likeness that is developed through the investment of time, effort and money." *Id.* § 8316(e).

With respect to his claim that the Defendants have misused his name, Mr. Grande asserts that the "Defendants appropriate[d] the valuable Plaintiff's surname, without authorization, to defendant's commercial advantage[;] [u]se of the Grande name is of very high commercial value. It is by far one of the biggest sale driver names that Starbucks uses[;] and [a]udio recordings are available showing the extreme disparity in orders and use of the Grande name compared to any other." Am. Compl. (Doc. No. 30) at ¶¶ 59-61. With respect to his claim that the Defendants misappropriated his likeness, Mr. Grande asserts that "Defendants appropriate[d] the valuable Plaintiff's likeness, without authorization, to defendant's commercial advantage[;] the Plaintiff's likeness includes but is not limited to personal data, genetic data, biometric data, intellectual property, advertising, marketing, and/or sales preferences and influences[;] [and b]oth locations have used their supplied access to the internet as a mechanism to appropriate the Plaintiff's likeness i.e. personal data from his smart phones." *Id.* at ¶¶ 65-67

The Court finds these allegations cannot sustain Mr. Grande's causes of action. Mr. Grande must factually allege that by using his name or likeness, the Defendants somehow attributed association to Mr. Grande. *See The Choice if Yours, Inc. v. The Choice is Yours*, No. 14-1804, 2015 WL 5584302, at *5 (E.D. Pa. Sept. 22, 2015) (holding that because the plaintiff failed to allege that the use of a name served to identify him as a person, his misappropriation claim failed). Further, he must factually allege that his name or likeness has some commercial value. His allegations do not give rise to such an association or an inference of acquired commercial value. Consequently, the Court will dismiss counts 6 and 7 of the amended complaint.[6]

---

[6] In his opposition briefing, Mr. Grande claims he has acquired notoriety from his various jobs, his publication in a 1995 magazine, and the like. However, these assertions are not set forth in his amended

10

## VI. Allegations Related to Defendant Howard Schultz

Finally, in Count 8, titled "Piercing the Corporate Vail [sic]," Mr. Grande asserts liability against Howard Schultz, by attempting to contend that Mr. Schultz has personally committed a tort. However, the assertions lodged against Mr. Schultz do not give rise to his liability. Again, Mr. Grande has proffered only conclusory claims and has not presented a single fact to support the argument that Mr. Schultz personally engaged in misconduct against him sufficient to pierce the corporate veil. *See, e.g.*, Am. Compl. (Doc. No. 30) at ¶¶ 76-78 (contending that Mr. Schultz must have been personally involved or accountable because "[e]stablishing business standards is the responsibility of [c]orporate executives[, and]" "[the h]igh value of Plaintiff's likeness [and name] alone would require involvement . . . of the executive level[.]") Consequently, the Court will dismiss Mr. Schultz from this action with prejudice.

---

pleadings. Mr. Grande also appears to change his theory of liability in this regard. Pl.'s Reply (Doc. No. 36), pp. 6-8 (asserting that his sixth and seventh counts are possible Lanham Act claims). Mr. Grande will be permitted leave to amend his pleadings with respect to Counts 6 and 7 only, so that he may clearly set forth the causes of action he pursues, being sure to factually plead only legally cognizable causes of action and each element of the claim asserted.

## Conclusion

For the aforementioned reasons, the Court will dismiss Mr. Grande's third, fourth, fifth, and eighth counts, with prejudice. Mr. Grande's battery claim in Count 1 and his tampering claim will be permitted to proceed. To the extent that Mr. Grande wishes to pursue his claims in Counts 6 and 7, he must file an amended complaint, abiding by the Court's instruction in footnote 6 of this Memorandum. Any amended complaint should remove the claims that have been dismissed by the Court in either this Memorandum or the Court's Memorandum of April 1, 2019. An appropriate order follows.

BY THE COURT:

_/s/ Gene E.K. Pratter_
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**