IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES C. GRANDE,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| v. | : | |
| | : | |
| **STARBUCKS CORPORATION et al.,** | : | No. 18-4036 |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                           OCTOBER ___, 2021

The law does not punish all perceived indignities. James Grande, a patron of Starbucks, claims that the coffee shop cleaned too close to him. He also accuses the coffee shop of tampering with his drinks. His first complaint is not a legal wrong. For the second, he provides no proof. So his claims cannot go to trial. The Court thus grants Starbucks's motion for summary judgment.

### BACKGROUND

Mr. Grande has frequented Starbucks for years. Claiming that Starbucks mistreated him during his visits and misappropriated his last name, he sued it and two local affiliates, Two Six Two S. 18th Association and 1528 Walnut Limited Partnership. Two amended complaints later, the Court dismissed his misappropriation claims but let two tort claims, hazardous waste battery and product tampering, proceed to discovery.

Mr. Grande alleges that he was "attack[ed]" at the Starbucks located at 1528 Walnut Street and 1801 Spruce Street in Philadelphia. Doc. No. 81 ¶ 30(b). In both coffee shops, employees swept "at" him and emptied trash nearby. *Id.* ¶ 30(e). Plus, someone twice tampered with his tea or coffee, making him sick. *Id.* ¶ 67(b). Starbucks did this, he says, "to intimidate" him because of his last name. *Id.* ¶ 30(b).

Discovery has closed. Starbucks and its affiliates now move for summary judgment. Fed. R. Civ. P. 56.

1

## LEGAL STANDARDS

To get to trial, a plaintiff cannot rest on allegations; he must have proof. This Court must grant summary judgment if, based on the undisputed "material" facts, no reasonable juror could find for Starbucks. Fed. R. Civ. P. 56(a). Starbucks, as the moving party, bears the initial burden of proof. It must show that, based on the evidence produced during discovery, Mr. Grande has failed to make out a necessary part of his claim. *Id.* 56(c)(1). Once it does, the burden shifts to Mr. Grande to point to "particular" evidence to support his claims. *Id.*

In assessing the evidence, the Court draws all reasonable inferences in favor of Mr. Grande, the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And because Mr. Grande represents himself, the Court reads his submissions generously. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Still, Mr. Grande "may not rest on the mere allegations" in his complaint, but must point to enough "specific facts" in the record for a reasonable juror to find for him at trial. *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir. 1989) (internal quotation mark omitted).

In this diversity case, Pennsylvania law governs. 28 U.S.C. § 1332; *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 356 (3d Cir. 2020). For each tort claim, this Court predicts how the Pennsylvania Supreme Court would rule. *McCafferty*, 955 F.3d at 356.

## DISCUSSION

Mr. Grande accuses Starbucks of two torts, "refuse battery" and "product tampering." Doc. No. 81 ¶ 3(b). But Mr. Grande has failed to provide sufficient evidence to support either claim.

2

### I. No reasonable juror could find that Starbucks battered Mr. Grande with dust or trash

To establish a claim for battery, Mr. Grande must show that Starbucks intentionally subjected him to a "harmful or offensive contact." *Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997); *accord* Restatement (Second) of Torts § 13. Per Mr. Grande, the defendants "use[d] sweeping and trash removal to attack [him] with refuse … to intimidate [him]." Doc. No. 81 ¶ 26(b). Based on the record, no reasonable juror could find that Mr. Grande has met *any* element of a battery.

#### A. Starbucks did not contact Mr. Grande with a harmful substance

To start, no reasonable juror could find that Starbucks subjected Mr. Grande to a "contact." To batter him, Starbucks must have caused some part of Mr. Grande—his eyes, his skin, his clothes—"to come into contact with a foreign substance." Restatement (Second) of Torts § 18 cmt. c. That is, the foreign substance must have "touch[ed]" Mr. Grande. *Contact* (def. 1a), *Oxford English Dictionary* (2021); *accord Commonwealth v. Gregory*, 1 A.2d 501, 503 (Pa. Super. Ct. 1938). Otherwise, it is an assault, or the "imminent apprehension of" a harmful or offensive contact. Restatement (Second) of Torts § 21. As Mr. Grande admits, no Starbucks employee ever touched him with trash or a broom. Def's Ex. L 70:20–22, 75:7–11, Doc. No. 77-16; Def.'s Ex. M 7:22–23, Doc. No. 77-17. Despite this, he insists, he was touched by the dust and waste particles.

For proof, Mr. Grande submits photos that show employees emptying trash cans and sweeping in the area of his table. Doc. No. 81, at 48–58. To Mr. Grande, these photos "alone" prove contact. Doc. No. 81, ¶ 43(i). But he did not produce these photos during discovery. *See* Fed. R. Civ. P. 56(c)(1)(A) (A party defending against summary judgment must cite to "materials in the *record*.") (emphasis added). Either way, none of the photos proves contact. Each shows the

3

Starbucks employee cleaning some distance from Mr. Grande, and none shows dust on Mr. Grande.

Next, Mr. Grande claims that his eyes would "itch" during the cleaning, and he points to "floaters" he has in his eyes. Def's Ex. M 16:18–22, 28:13–22. But he has not produced medical testimony that the itching or "floaters" were caused by dust or waste particles. Mr. Grande claims that his eye doctor "made it very clear that the problem was 'waste in the eye.'" Doc. No. 81 ¶ 54(c). But the doctor's report he produced does *not* say that. In fact, the report says nothing at all about the cause of his "floaters." *See* Def.'s Ex. O at 4–7.

Finally, Mr. Grande posits that the dust and waste *had* to have contacted him. Starbucks used "open" dust pans and "open rag[s]" to clean. Def's Ex. L 70:5–13, 65:6–8. Because "waste" and "pathogens" can "travel" the "short distance" between him and the dustpan, he asserts, the particles must have come into his "proximity." *Id.* 65:10–15. Such speculation is not enough. He has provided no studies showing how far dusting or pulling out a trash bag can cause waste or dust particles to travel, nor provided pictures of him at Starbucks with visible dust on him. *Compare Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1172–73, 1178 (Pa. Super. Ct. 1989) (proof that radioactive steam contacted plaintiff because his personal device measured extremely high amounts of radiation); *Findlay Refractories v. Workmen's Comp. Appeal Bd.*, 415 A.2d 716, 717 (Pa. Commw. Ct. 1980) (proof of contact with dust based on testimony from three witnesses that "there is dust throughout the [manufacturing] plant" and air samples that showed millions of "dust particles per cubic foot of air").

Because Mr. Grande has not provided "colorable" proof that dust and waste particles touched him, no reasonable juror could find that Starbucks contacted him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

4

## B. Being dusted near is not harmful or offensive

Even if Starbucks did contact Mr. Grande, no reasonable juror could find that contact "harmful" or "offensive." *Dalrymple*, 701 A.2d at 170. To be "harmful," the contact must cause "physical pain or illness" or some "physical impairment" or "alteration" of the body. Restatement (Second) of Torts § 15 and cmt. a. To count as "offensive," the contact must offend a person's "personal dignity." Restatement (Second) of Torts § 19; *accord Herr v. Booten*, 580 A.2d 1115, 1117 (Pa. Super. Ct. 1990).

Mr. Grande asserts that the dust and waste particles were harmful because they caused the "floaters" in his eyes. But, as explained above, Mr. Grande has provided no proof—no doctor's note or medical testimony—tying his "floaters" to the dust and waste particles at Starbucks. So no reasonable juror could find that the particles were harmful.

Nor could a reasonable juror find them offensive. The contact must offend "the ordinary person," not just someone "sensitive" about his personal space. Restatement (Second) of Torts § 19 cmt. a. Hence, if the contact is common or expected at "the time and place," then it is not offensive. Restatement (Second) of Torts § 19 cmt. a. For example, if a person walking down a "densely crowded" Walnut Street "deliberately" nudges another on the sidewalk "to pass him," that "is not an offensive" contact, no matter how little the other person likes to be touched. Restatement (Second) of Torts § 19 ill. 2. "Not only are such jostlings socially accepted, they are necessary to protect the rights of others who must also live in an unpleasantly crowded world." Dan B. Dobbs, Paul T. Hayden, & Ellen M. Bublick, *The Law of Torts* § 34 (2d ed.).

Dealing with light cleaning is the price all customers pay to frequent coffee shops. Indeed, as Mr. Grande acknowledges, it was "commonplace" for Starbucks to dust and empty trash bins with customers inside. Def.'s Ex. L 74:3–6. Unlike flinging trash at him or dumping a full dust

5

pan on him, cleaning *near* a customer does not "impinge[] upon [his] sense of physical dignity or inviolability." *Herr*, 580 A.2d at 1117; *accord* Restatement (Second) of Torts § 18 cmt. c. Because Starbucks did only that, no reasonable juror could find that any attenuated contact with dust or waste particles was offensive or harmful.

### C. Starbucks did not intend to contact Mr. Grande with dust or waste

Nor could a reasonable juror find that the defendants *intended* to contact Mr. Grande with dust or waste particles. For intent, Mr. Grande must show that the Starbucks employees "desire[d] to" contact him with dust and waste particles or knew that their cleaning was "substantially certain" to do so. Restatement (Second) of Torts § 8A. Per Mr. Grande, employees began cleaning "within seconds of [his] arrival." Doc. No. 81 ¶ 42(f). From this, he posits that the employees "waited for [him] to get there" before cleaning. Def.'s Ex. L 47:16–23. Otherwise, as Mr. Grande conceded in his deposition, he had no other evidence of intent, just his "opinion." *Id.* 73:5–14. Such speculation is not enough for a reasonable juror to find that Starbucks employees, by cleaning nearby, hoped that dust and waste particles would travel through the air and touch Mr. Grande. *Compare Field*, 565 A.2d at 1178 (employer intended contact when it chose to release radioactive steam into closed tunnel where it had sent employee to work).

### D. Mr. Grande consented to contact by patronizing the coffee shops

Moreover, Starbucks contends, Mr. Grande consented to light cleaning around him. To recover for battery, a plaintiff must have not consented to the harmful or offensive contact. Restatement (Second) of Torts § 892A(1) & cmt. a. Though Mr. Grande knew that Starbucks swept its floors and emptied its trash cans while customers were around, he still chose to come inside. Even if he did not *actually* consent to the cleaning, no reasonable juror could dispute that he *seemed* to consent. For him entering the store, ordering a coffee, and sitting down to drink it would be

6

"reasonably understood by" the Starbucks employees as consent to their normal store cleaning. Restatement (Second) of Torts § 892(2); *compare Quinn v. Ltd. Exp., Inc.*, 715 F. Supp. 127, 130 (W.D. Pa. 1989) (apparent consent to polygraph where employee "did not tell [anyone] that she did not want to take the test" or "object to the examiner hooking up the equipment"). And apparent consent is just "as effective" as actual consent. Restatement (Second) of Torts § 892(2).

In sum, Mr. Grande has not provided sufficient evidence for a reasonable juror to find that Starbucks intentionally contacted him with dust and waste particles. Thus, the Court grants Starbucks summary judgment on his claim for refuse battery.

## II. No reasonable juror could find that Starbucks tampered with Mr. Grandes's drinks

Mr. Grande accuses Starbucks of tampering with his tea and coffee. Fairly read, this is also a battery claim: by putting a harmful substance in his drink, which he then drank, Starbucks "indirectly" caused him "to come in contact with" an "offensive" "foreign substance." Restatement (Second) of Torts § 18 cmt. c. Though Mr. Grande claims Starbucks tampered with his drinks on two occasions, he submits an affidavit detailing just one incident: within an hour of drinking a "small coffee" from the Starbucks at 1801 Spruce, he began to experience "extreme" stomach pain and vomiting. Doc. No. 81, at 42. Because he had not had anything else to eat or drink in the nine hours prior, he attributed the pain to the small coffee. *Id.* at 43.

Yet he has put forth no evidence on *how* his coffee was tampered with or *who* tampered with it. He asserts that someone put "[s]ome added substance" into his cup. Doc. No. 81 ¶ 67(b). Yet he has no proof that someone *put* something in his drink. He did not see it, nor has he pointed to a bystander who did. Def.'s Ex. L 48:24–49:2; Def.'s Ex. N ¶ 8, Doc. No. 77-18. Nor has he offered expert testimony to even speculate what that "substance" could be. Instead, for his sole support, he rests on statements from "doctors" that his stomach problems were "caused by" a

7

"substance ... put into" his drink. Doc. No. 81 ¶ 67(e). Yet he does not identify these doctors, much less produce medical records or expert testimony that the stomach pain had to be caused by the coffee, rather than a stomach bug or latent food poisoning from an earlier meal.

Even if the Court reads this claim as a products-liability claim, it still fails. To establish a prima facie case for products liability, Mr. Grande must show that (1) Starbucks sold a product "in a defective condition," (2) Starbucks is "engaged in the business of selling" that product, (3) the product was "expected to and d[id] reach" Mr. Grande "without substantial change in [its] condition, and (4) the product caused "physical harm" to Mr. Grande or his property. Restatement (Second) of Torts § 402(A). But, as before, Mr. Grande has not articulated *how* the coffee or tea he purchased was defective, beyond that it contained some unidentified "substance." To get to a jury, Mr. Grande must do more than point to a mysterious, unidentified problem with his coffee; he must instead provide "evidence ... sufficient to *prove* a defect." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 382 (Pa. 2014) (emphasis added). Further, Mr. Grande has not shown that the coffee caused his pain. He rests solely on timing. He got sick within 30 minutes of drinking his coffee, and he had not had anything else to eat or drink that day. Thus, he reasons, his stomach pain *had* to be caused by the coffee. Once again, however, he provides no medical theory, testimony, or other evidence to tie the two events together or to even begin to rule out other possible causes.

Mr. Grande has not provided any specifics from which a reasonable juror could find that Starbucks tampered with his drinks. Thus, the Court also grants Starbucks summary judgment on Mr. Grande's product-tampering claim.

### III. The Court will not sanction Mr. Grande for his belated discovery

Starbucks also requests sanctions against Mr. Grande. In his initial disclosures, Mr. Grande had to provide "a copy ... of all documents" in his possession that he might "use to support [his]

8

claims." Fed. R. Civ. P. 26(a)(1)(A)(ii). Later on, if he found new documents, he had to supplement his disclosure. *Id.* 26(e)(1)(A). If he did not share those documents with the other side, the Court could sanction him for failing to do so. *Id.* 37(b)(2)(A). Starbucks faults Mr. Grande for producing his exhibits—namely, the photos of the Starbucks employees cleaning nearby and his affidavit about getting ill after drinking a coffee—for the first time in his response to its summary-judgment motion. Though Mr. Grande should have produced these exhibits during discovery, the Court will not sanction him. Courts should be hesitant to sanction *pro se* plaintiffs absent repeat abuses or flagrant violations of clear instructions.

## CONCLUSION

To make it to trial, a plaintiff must have enough concrete evidence to prove his claims to a jury. Because Mr. Grande does not, the Court grants the defendants' motion for summary judgment. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE